Mr. Kaplan for the petitioner, Mr. Byron Meister for the respondent. Good morning. Good morning, Your Honors. Jonathan Kaplan for the petitioner. Your Honors, this case arose out of a union election at the Employers' Facility in Atlanta, Georgia, and it involves testimony and facts involving blocking of ingress to the facility by union picketers in August of 2015. Two key witnesses on that testimony, Yolanda Thornton and Mary Weather, Erica Mary Weather, testified about the blocking, which the hearing officer largely disregarded because he considered the testimony to be, in his words, conclusory and contradictory in the case of Thornton. And in the case of Mary Weather, she said that her testimony was conclusory, largely devoid of any specific contradictory and confusing. But he never made witness credibility determinations with respect to that testimony. And interestingly, while he found there was no real blocking, in his decision, he says, and I'm quoting, this is the exchange involving Mary Weather, the exchange was a minute or two before she blew her horn, the demonstrator moved out of the way, and she proceeded into the parking lot. The hearing officer fixated on whether or not there was literature being passed to the people in the car from the side of the car. And obviously, if you're beside the passenger window of a car, you're not standing in front of the car. But the hearing officer disregards and ignores the fact that this is a group of 15 to 20 people who are parading and picketing in front of the employer's facilities. I think what the hearing officer and the board were focused on, except Thornton and Mary Weather's testimony is true, it's like, so what? It's of no moment, there's no coercion, no threatening, you're not really blocking anybody. I mean, it's very clear, you look at the record, it's kind of, oh, what's the big deal? So I guess the big deal. I can give you blocking cases and threatening cases, as you know, that are honest to goodness. Certainly. Serious cases. These are not interesting cases. These are not serious cases. Well, I think it's all question of degree, Your Honor. I would agree with that. But we would rely principally on Metal Polisher's Local 67, which is a 1972 board decision with the board held, this is an entirely peaceful situation, very much like the facts in the case of Barr, that a delay of ingress and egress from one to five minutes under peaceful conditions constitutes a violation of the act and blocking. That's the board case law that we're relying on. You really think that that is a rule of law, that if you can fit that paradigm, it's automatically a violation? That is not the case, because there have been so many cases since then. How many years have passed? That's the best you could, at least you found it. But there have been so many cases since then that suggest that the board looks at the context and they make a determination and we're supposed to defer to it unless there's no reason to decision-making. I mean, when you read this record, I shrug my shoulders. Of course that's the finding. Well, Your Honor, the case of Thornton, it wasn't just the blocking. It was also the threat, where she testified that as she was being blocked from the ingress to the facility, she heard one of the picketers state to her, quote, if you don't vote yes for the union, we will F you up, close quote. And I think in the vernacular, Your Honor, that can be considered a threat of violence. That's undisputed that that was made. And I think the finding was that there was nothing to indicate that was clearly directed at her or whatever was said. Your Honor, she was the only person coming through the line at the time. There's a group of 10 to 15 people. And under Avis Renicar, that's a strict liability offense. The union owns the conduct of those picketers. This is not a third-party conduct issue. And so we would argue that combination of the blocking, in her case, approximately a minute, in the case of Meriwether, up to two minutes, plus that threat in the case of Thornton, we believe that would be sufficient to constitute objectionable conduct. I think, Your Honor, the fact that this case also involves a very close election, 35 to 31, and Ms. Thornton testified, and this is to me the most shocking part of the case, she testified that these events made her feel uneasy, made her not want to come to work, and ultimately made her vote against her conscience. She testified in response to cross-examination questions. What does that mean, vote against her conscience? She changed her vote, Your Honor. Which way? We don't know, Your Honor. Well, it's not terribly helpful, is it? Well, but, Your Honor, if we're trying to preserve laboratory conditions, the fact that these events were significant enough to cause an employee to change her vote, however she changed it, and to not vote her conscience, that's what we're here for. See, but the problem is that in the board situations where you have these kinds of back-and-forth going on, over the years what the board has understood is that even though you're trying to protect employees, sometimes employees claim sensibilities that are utterly unreasonable, and we're not going to credit it. And so someone says, oh, I was scared to death. Well, but you look at the circumstances and say, well, you know, we're really sorry for you that your level of sensibility is that bad, but we can't credit that because these kinds of things go on, and there's no reason for us to think that a reasonable person will feel threatened or coerced, and there isn't anything to indicate that the comment was directed at you. That's what they found. And I don't know how we ignore their findings of their findings. Also, you were talking about Thornton, right? Yes, Your Honor. Isn't Thornton the witness who the hearing officer said he didn't credit her testimony because it was elicited to a leading question? Well, Your Honor, that's an interesting point. That's why I asked it. The actual exchange with respect to the leading, an objection was raised when the question was asked by counsel to the employer on direct examination. And the judge denied, overruled the objection and allowed the witness to continue to testify. But that wasn't the statement that was ultimately the key piece of this. That was on cross-examination in response to questions from the union's counsel. There were no leading questions.  And that's where that statement of the detail where he asked her what exactly was said to you, and that's when she said. Can you cite any case where this Court has engaged in that kind of searching, examination of an ALJ's credibility determination? Your Honor, I can't cite a case standing here, but I do believe under universal camera the Court is and does have the ability to look at the record and determine whether there's substantial evidence on the record as a whole to support the findings. Well, that wasn't the question I asked you. I understand, Your Honor. I don't have a case to cite, Your Honor. Okay. Anything further? Well, Your Honor, with respect to Mary Weather, the impact that the events had on her ultimately actually resulted in her tendering her resignation. She did not ultimately resign. So I think if you have this close of an election, 35-31, if Yolanda Thornton did change her vote, and if she had voted for the employer and not the union, we would be dealing with 34-32. There were two challenge ballots. That would make this determinative. And so under this Court's decision in Manor Care last year, where there's the closeness of the result of the election, we believe that the Court doesn't have to find broad dissemination of the threats or broad dissemination of the impact. We have two people impacted by this conduct. One changed her vote. One tendered her resignation. And either one of those would have put this into a determinative challenge case. And so we believe that's significant, Your Honor. All right. Thank you. Counsel for the Board. Thank you. May it please the Court. Misha Bauermeister for the Labor Board. I would like to focus on two issues in my presentation. The first is hand-billing. Second, the hearing officer's evidentiary rationale for rejecting the Yolanda Thornton threat. First, the hand-billing. In the week leading up to the election, the union held two peaceful demonstrations outside the employer's property. Each demonstration was about 90 minutes in length. During these demonstrations, individual demonstrators approached employees driving to work, approached their cars from the side, at the driver's side, in order to hand them a flyer and peacefully persuade them to support the union. This conduct was clearly lawful under established board precedent, which the company has not challenged here. Now, unless there are any questions about that, I would move right on to the alleged threat to Thornton. Now, as the Court already indicated, there were multiple independent separately sufficient rationales for rejecting the objection based on the alleged threat to Yolanda Thornton. And it's only one of these that I want to touch upon now, specifically the hearing officer's ruling to afford Thornton's testimony little probative weight. Now, before even getting into the substance of whether that ruling was appropriate, I have several procedural points to make. Well, by several, I mean two. First is this Court does not have jurisdiction to look into the propriety of that ruling because nowhere in Pruitt's request for board review did Pruitt even acknowledge this evidentiary ruling, much less provide any reason for showing that it is erroneous. Having not made any argument to that effect to the board, the Court does not have any jurisdiction to hear such an argument now. And I would add to that, even though this isn't a jurisdictional ground, the company also didn't challenge that ruling in its opening brief. Thus, under this Court's waiver rules, the argument would be waived even if there were jurisdiction. Now, I would be prepared to address the merits of the hearing officer's evidentiary ruling if the Court were interested or were not persuaded by the 10e argument. But perhaps I'll just make it briefly. The hearing officer afforded Thornton's testimony little probative weight in light of the fact that it was elicited from leading questions by counsel. Now, the company, in its reply for the first time addressing this issue, says, no problem, because she kept on testifying, and then eventually she put the statement in her own words. She put the content of the statement in her own words. But given the context in which Yolanda heard or did not hear that statement or some other statement, the leading by counsel presented a serious risk of making the crucial difference between what exactly Yolanda Thornton's testimony would have been as to the content of the statement. To explain, let me go back to the situation about which Thornton was testifying. This was on the day of the demonstration. She was driving into work or had driven into work. It's not clear exactly where she was at this point, but it was around the time that she was driving in. There was a higher-than-usual level of ambient noise. There were 15 to 20 union demonstrators on the sidewalk outside the facility. She was in the process of driving. She did not have any sort of visual on the speaker. Now, in this context, there was reasonably a very high risk of mishearing, or not even necessarily mishearing, but hearing a snippet of some longer conversation out of context. Now, against this background, if Yolanda Thornton had been allowed to testify spontaneously without words being put in her mouth, she may very well have acknowledged the uncertainty, the uncertain circumstances about which she was testifying. This is not a hypothetical concern because we actually have a, I should say, a test case comparator in this very record. That is Meriwether. Now, Meriwether, as you may recall, testified about a conversation she overheard indoors in the facility, a conversation between approximately four or so coworkers who were up to 20 feet away. Now, she testified that she heard them say, either the union will F people up or the union will get F'd up. Now, the hearing officer quite reasonably found this testimony on its face too unreliable to indicate a threat. Now, Meriwether wasn't sure about what she heard, but she was indoors listening to a small group of people talk. Thornton, on the other hand, was outside during the demonstrations with a higher than usual level of ambient noise. There were 15 to 20 people around. She was driving. She did not even have a visual on the speaker. The counsel for Pruitt, which I would add is not my opponent here today, different counsel, precluded the possibility for spontaneous testimony by essentially testifying on the witness's behalf and committing her to a particular story. Meriwether was asked what she heard when she was at work. Thornton was told. She was told by the attorney of the company that she had worked for for under three months at that point in time. Under these circumstances, the fact that after the leading, she later used her own words about the content of the statement did not fix the taint. Under these circumstances, it was clearly not an abuse of discretion to afford her testimony little probative weight and to find it insufficient to establish an objectionable threat. Now, if there are no further questions, I would simply ask that the court enforce the board's order and require the company to bargain with the union. Thank the court for its time. Thank you. All right. Counsel for petition? Your Honor, unless the court has any questions, I have nothing further for rebuttal. Thank you. The case will be taken under advice. Stand please.
judges: Rogers, Tatel, Edwards